IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DARREN WILSON, #N95724** | |
| Plaintiff, | |
| v. | Case No. 20-cv-394-NJR |
| **WEXFORD HEALTH SOURCES, INC., P. MYERS, STEPHEN RITZ,** and **MICHAEL MONJE,** | |
| Defendants. | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This matter is before the Court on a Motion for Summary Judgment for Failure to Exhaust Administrative Remedies filed by Defendants Wexford Health Sources, Inc., Percy Myers, and Stephen Ritz ("Wexford Defendants"). (Doc. 31).[1] For the reasons set forth below, the Wexford Defendants' Motion for Summary Judgment is granted in part and denied in part.

### BACKGROUND

On April 30, 2020, Wilson, an inmate of the Illinois Department of Corrections ("IDOC") at Pinckneyville Correctional Center ("Pinckneyville"), initiated this action pursuant to 42 U.S.C. § 1983 alleging that the Wexford Defendants were deliberately indifferent to his medical conditions in violation of the Eighth Amendment. (Doc. 1).

---

[1] On June 9, 2021, the Court granted Defendant Monje's Motion to Withdraw the Affirmative Defense of Failure to Exhaust Administrative Remedies. (Doc. 38).

After threshold review of his complaint pursuant to 28 U.S.C. § 1915A, Wilson was permitted to proceed on the following claims:

| | |
|---|---|
| Count I: | Ritz and Myers violated the Eighth Amendment when they were deliberately indifferent to Wilson's serious medical needs by denying him pain relief, follow-up treatment, and diagnostic testing as recommended by his orthopedic surgeon for his shoulder condition. |
| Count II: | Wexford violated the Eighth Amendment when it was deliberately indifferent to Wilson's serious medical needs by causing Wilson's requests for medical treatment for his shoulder to be denied under its money-saving policy. |

(Doc. 10, p. 8).[2]

The Wexford Defendants' Motion for Summary Judgment for Failure to Exhaust Administrative Remedies argues that Wilson failed to exhaust his administrative remedies prior to filing this lawsuit when he did not follow the proper steps outlined in the Administrative Code as to those grievances. (Doc. 31); *see* 20 ILL. ADMIN. CODE § 504.800 *et seq*.

## LEGAL STANDARD

Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C.

---

[2] The Court added Dennison the Warden of Pinckneyville "in his official capacity only, for the purpose of implementing any injunctive relief awarded." (Doc. 10). The Court then substituted Monje for Dennison as the Warden of Pinckneyville. (Doc. 30).

§ 1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004).

"To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809. "[D]ebatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey*, 544 F.3d at 740-41.

*Illinois Administrative Code*

The grievance procedure for inmates of the IDOC is laid out in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, *et seq*. If the inmate's grievance does not involve an emergency, the inmate must first file a grievance with the counselor within 60 days of the discovery of an incident. *Id.* § 504.810(a). The grievance form must contain factual details regarding what happened, when, where, and the name of each person who involved in the complaint. *Id.* at 504.810(c). While this provision does not preclude an

offender from filing a grievance when the names of individuals are not known, he or she must include as much descriptive information about the person as possible. *Id.*

Grievances that are unable to be resolved through the counselor are then sent to the Grievance Officer. *Id.* at § 504.820(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." *Id.* at § 504.830(e). The Chief Administrative Officer then reviews the findings and recommendation of the Grievance Officer and advises the offender of his or her decision in writing. *Id.*

If the inmate is not satisfied with the response from the Chief Administrative Officer, he or she can file an appeal the decision to the Administrative Review Board. *Id.* at § 504.850(a). The appeal must be received by the Administrative Review Board ("ARB") within 30 days after the date of the decision by the Chief Administrative Officer ("CAO"). *Id.* The ARB then must submit to the Director a written report of its findings and recommendations. *Id.* at § 504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, when reasonably feasible under the circumstances." *Id.* at § 504.850(e).

DISCUSSION

I.  **Grievances that Failed to Identify or Describe Wexford Defendants[3]**

Under the Illinois Administrative Code, an inmate is required to provide "factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 ILL. ADMIN. CODE §504.810(c). This does not, however, preclude an inmate from filing a grievance when the names of individuals are unknown. Rather, the offender must include as much descriptive information about the individual as possible. *Id.* The Seventh Circuit has interpreted this as requiring the inmate to provide names only to the extent practicable. *See Glick v. Walker*, 385 F. App'x 579, 582 (7th Cir. 2010).

On June 21, 2018, Wilson submitted an emergency grievance relating to the lack of physical therapy for his shoulder after orthopedic consultation and wanting a follow up with an outside orthopedist. (Doc. 32-5, p. 215). The Wexford Defendants argue that "[n]one of these Defendants were named or described in this emergency grievance [and] no acts or omissions of either Dr. Myers or Dr. Ritz, or any 'money-saving policies or practices of Wexford were described therein.'" (Doc. 32, p. 3). In fact, the Wexford Defendants make the same argument regarding Wilson's grievances from October 2, 2018, August 5, 2019, August 18, 2019, and August 20, 2019. (Doc. 32-4, pp. 123, 125, 127,

---

[3] These grievances include: June 21, 2018 (#06-86-18), October 2, 2018 (#10-34-18), August 5, 2019 (#2472-08-19), August 18, 2019 (#2655-08-19), and August 20, 2019 (#2666-8-19).

250). The Court agrees. Here, Wilson neither identified Wexford, Dr. Ritz, or Dr. Myers—nor described them in any fashion—in these grievances. Therefore, these grievances will not serve to exhaust his administrative remedies as to the Wexford Defendants.

II.     **October 8, 2018 Grievance (#10-71-18)**

However, on October 8, 2018, Wilson submitted an emergency grievance relating to denial of treatment of his left shoulder and identifies Dr. Myers. (Doc. 32-4, p. 247). The Wexford Defendants argue that "Dr. Myers is only described with regard to Plaintiff's knee pain, and the primary thrust of this grievance is regarding medical co-pays." (Doc. 32, pp. 3-4). The Court disagrees. Wilson complains that Defendant Myers told him he could not see him for the shoulder pain that day. Therefore, this grievance serves to exhaust his administrative remedies as to his claims against Defendant Myers.[4]

III.    **February 24, 2020 Grievance (#536-02-20)**

On February 24, 2020, Wilson submitted an emergency grievance relating to pain in his shoulder and changing prescription medicines. (Doc. 32-4, p. 89). According to the Pinckneyville Grievance Receipt Log, the grievance officer received the grievance on February 25, 2020. (Doc. 32-5, p. 4; Doc. 45, p, 22). The grievance officer reviewed the grievance on March 31, 2020. (*Id*.). The CAO concurred on April 1, 2020. (*Id*.). Wilson allegedly appealed the issue to the ARB on April 8, 2020, but no determination is

---

[4] According to the Pinckneyville Grievance Receipt Log, the grievance officer received the grievance on October 23, 2018. (Doc. 32-5, p. 2). The grievance officer reviewed the grievance on October 29, 2018. (Doc. 32-4, p. 246). The CAO concurred on October 30, 2018. (*Id*.). Wilson appealed the issued to the ARB on November 15, 2018. (*Id*.). The ARB denied the grievance on November 28, 2018. (*Id*. at p. 245).

contained in the record. Even if Wilson appealed the issue to the ARB on April 8, 2020—he filed his complaint on April 30, 2020—prior to receiving a final determination by the ARB for this grievance. Accordingly, this grievance fails to exhaust Wilson's administrative remedies as to his claims against the Wexford Defendants.

## IV.     March 27, 2020 Grievance (#856-03-20)

On March 27, 2020, Wilson submitted an emergency grievance that Defendant Myers denied him treatment for his shoulder. (Doc. 1, p. 30). According to the Pinckneyville Grievance Receipt Log, the grievance officer received the grievance on March 30, 2020. (Doc. 32-5, p. 4). The grievance officer reviewed the grievance on April 1, 2020. (Doc. 32-4, p. 84). CAO concurred on April 6, 2020. (*Id.*). Wilson appealed the issue to the ARB on April 8, 2020. (*Id.*). The ARB denied the grievance on December 7, 2020. (*Id.* at p. 83).

As noted by Defendants, Wilson did not receive the ARB response to this grievance until well after he filed his complaint. (Doc. 32, p. 11). More importantly, there was no delay in responding to the grievance that prevented Wilson from exhausting his administrative remedies earlier. *Dole*, 438 F.3d at 809; *see also Mason v. Snell*, 2021 WL 4355400, at *4 (S.D. Ill. Sept. 24, 2021) (finding that the grievance officer's delay in responding to the grievance prevented the inmate from exhausting his remedies because "the grievance officer did not review the grievance until *August 27, 2019*—almost eight months after [inmate] appealed to the grievance officer"). Accordingly, this grievance fails to exhaust Wilson's administrative remedies as to his claims against the Wexford Defendants.

V.    **October 2, 2020 Grievance (#2410-10-20)**

This grievance was filed after Wilson filed the Complaint. Accordingly, this grievance fails to exhaust Wilson's administrative remedies as to his claims against the Wexford Defendants.

## CONCLUSION

For the reasons stated above, the Wexford Defendants' Motion for Summary Judgment (Doc. 31) is **GRANTED in part and DENIED in part**. The motion is **GRANTED** as to Defendants Wexford and Ritz. The motion is **DENIED** as to Defendant Myers. This case shall now proceed as to Defendant Myers on Count I only.

**IT IS SO ORDERED.**

DATED:  March 16, 2022

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**